LINWARD A. CLARKE, EXECUTOR OF THE ESTATE OF MAGGIE M. CLARKE, PETITIONER, V. RUDOLPH B. CLARKE; JAMES EDWARD CLARKE, GEORGE LEE CLARKE, LINWARD CLARKE, RUDOLPH CLARKE, JR., FLORINE CLARKE, AND DOROTHY JEAN CLARKE, MINOR CHILDREN OF RUDOLPH B. CLARKE, DEFENDING HEREIN BY THEIR GUARDIAN AD LITEM, J. S. LIVERMON; NORMAN M. CLARKE, MAGALINE CLARKE, NORMAN M. CLARKE, JR., LAWRENCE CLARK, BEUNA KELLY CLARKE, LOUIS McCOY CLARKE, AND MORRIS CLARKE, MINOR CHILDREN OF NORMAN M. CLARKE, DEFENDING HEREIN BY THEIR GUARDIAN AD LITEM, J. S. LIVERMON; NICHOLAS LONG, GUARDIAN AD LITEM FOR THE UNBORN CHILDREN OF RUDOLPH B .CLARKE AND NORMAN M. CLARKE; GEORGE A. HUX, ANCILLARY ADMINISTRATOR OF THE ESTATE OF CORNELIUS CLARKE, DECEASED, SON OF TESTATRIX WHO DIED SUBSEQUENT TO TESTATRIX, A RESIDENT OF THE STATE OF NEW YORK; PATSY McKAY, ROSANNA McKAY, CHARLES McKAY, JR. AND FREDDIE McKAY, CHILDREN OF A DECEASED CHILD OF CORNELIUS CLARKE, DECEASED SON OF TESTATRIX, DEFENDING HEREIN BY THEIR GUARDIAN AD LITEM, GEORGE A. HUX; MADELINE CLARKE BLOUNT; LINWARD A. CLARKE, INDIVIDUALLY; MASSENA J. CLARKE, ADMINISTRATRIX OF THE ESTATE OF CORNELIUS CLARKE, MASSENA J. CLARKE, INDIVIDUALLY; GEORGE CLARKE; MARY CLARKE DAVIS; MARION CLARKE MARTIN; AND CORNELIUS CLARKE, JR., RESPONDENTS.

(Filed 12 October, 1960.)

1. Wills § 34c—

A bequest of funds to the heirs of testatrix' living son to be used for educational purposes, with any money left over to be divided among testatrix' children, transmits the funds to the children of the son living at the time of the death of testatrix, and is not subject to be opened up to let in after-born children, it being apparent from the will that the word "heirs" was not used in its technical sense. G.S. 41-6. The distinction is pointed out where there is an intervening life estate, in which event the limitation over to children would be subject to be opened up to admit after-born children.

**2. Wills § 33h—**

The rule against perpetuities provides that no devise or grant of a future interest in property is valid unless the title thereto must vest, if at all, not later than twenty-one years, plus the period of gestation, after some life or lives in being at the time of the creation of the interest.

**3. Same—**

A bequest of funds to the heirs of testatrix' living son to be used for their education does not violate the rule against perpetuities, the word "heirs" being construed to mean children, and the bequest being to the children living at the time of testatrix' death in accordance with the intent of testatrix as gathered from the entire instrument.

**4. Wills § 32—**

The presumption is that testatrix intended to make a legal and valid disposition of her property.

**5. Wills § 31—**

In construing a will, the court may not add to valid portions thereof provisions which are not therein expressed.

**6. Wills § 33d—**

A bequest of funds to the children of testatrix' son to be used for educational purposes, with provision that the executor should pay the funds to the father whenever the children qualified to receive them, with further limitation of any unused funds to testatrix' children, requires that the executor retain the funds and administer the trust by providing the father with funds to meet college expenses when each particular child enters college, and the time of the termination of the trust depends on many varying circumstances, although it can not extend beyond the time within which the funds may be used for the purposes of the trust. Further testamentary provision that the funds might be used by the parties in case of dire necessity is a subordinate feature which does not affect this result.

**7. Wills § 33g—**

Funds of the estate not impressed with a trust and undisposed of by will should first be resorted to for the payment of debts of the estate, funeral expenses and cost of the administration, and any funds remaining after such payment should be distributed according to the law of intestacy in effect at the time of testatrix' death.

**8. Wills §§ 32½, 33c—**

A gift of the residue of a trust fund, remaining after the administration of the trust, vests in the specified beneficiaries upon the death of testatrix, even though it is uncertain that there will be any residue, and the beneficiaries take a transmissible interest.

**9. Wills §§ 35, 33½—**

Where the gift of a share of the residue of a trust fund stipulates

that the share of one of the beneficiaries is to be used for designated purposes, the directions regulating the mode of enjoyment of the gift does not render the gift less than absolute, and such beneficiary takes a transmissible interest even though, if the gift is distributed during the lifetime of the beneficiary, it is the duty of the trustee to supervise its expenditure in accordance with testatrix' directions.

APPEAL from *P. i/i.:r*, J., December 1959 Term, of HALIFAX.

This proceeding was instituted pursuant to the Declaratory Judgment Act (G.S. 1-253 *et seq.*) for construction of the will of Maggie M. Clarke. The petitioner is Linward A. Clarke, executor. Maggie M. Clarke died 9 November 1958. The will, dated July 14, 1952, was admitted to probate 1 December 1958 and is as follows:

(1) "That I Maggie M. Clarke of Scotland Neck, Halifax County, North Carolina, a farmer, being in ill health and of sound and disposing mind and memory, do make and publish this, my last will and testament.

(2) "And as to my war bonds, I devise, bequeath and dispose thereof in the manner following, to wit:

(3) "First, my will is that all my just debts and funeral expenses shall, by my executors herein-after named, be paid out of ............ and as soon after my decease as shall by them be found convenient.

(4) "I give 50% of my War Bonds and their accumulation to the heirs of my son, Norman M. Clarke, to be used for College education only.

(5) "I give the remaining 50% of my War Bonds and their accumulation to the heirs of my adopted son, Rudolph B. Clarke, to be used for College education only.

(6) "The War bonds and their accumulation is to be issued by my executor to the fathers of the heirs when ever the heirs qualify to receive it. If the father becomes incapacitated, the money is to be drawn and payed to the institution by my executor.

(7) "In case of emergency or dire necessity, the amounts as above mentioned and the may be used for this purpose by the parties above stated. Should none of this money be used or if any of it is left after the College Education of these heirs has been paid for, the amount is to be equally divided between and among my children, Cornelius C. Clarke, Linward A. Clarke, Norman M. Clarke, Madelian L. Clarke Blount and Rudolph B. Clarke; Rudolph B. Clarke's amount is to be used for, business investment, home improvement, or illness or hospitalization.

(8) "And, lastly, I do nominate and appoint my son, Linward A. Clarke to be the executor of this my last will and testament. And

should he become incapacitated, my daughter, Madelien L. Blount is to act in his stead." (The numbering of paragraphs is ours.)

The sole assets of the estate are: United States Government bonds, $11,504.40; savings accounts in banks, $6,053.03. These values are as of the date of testatrix's death.

Testatrix was survived by her five children; Linward A. Clarke, Cornelius C. Clarke, Madeline L. Clarke Blount, Norman M. Clarke and Rudolph B. Clarke (an adopted child).

Since the institution of this proceeding Cornelius C. Clarke died, leaving issue.

At the time of the death of testatrix Norman M. Clarke and Rudolph B. Clarke each had six living children, all minors. These children are represented herein by J. S. Livermon, guardian ad litem.

Nicholas Long is guardian ad litem for the unborn children of Norman M. Clarke and Rudolph B. Clarke. George A Hux is guardian ad litem for four minor grandchildren and heirs at law of Cornelius C. Clarke, deceased.

Petitioner executor propounds questions:

(1) Does the word "heirs," as used in paragraphs 4 and 5 of the will, mean "children"?

(2) If so, did testatrix intend that any and all children of Norman and Rudolph born after her death share in the benefits provided for in paragraphs 4 and 5?

(3) What time or age limit is placed upon the use of the bonds by the children for college education?

(4) Shall the executor retain and administer the fund for educational purposes or should it be divided and delivered to Norman and Rudolph?

(5) After termination of the trust for educational purposes, how should the residue be distributed? Should Rudolph's share be held in trust for the uses specified in paragraph 7?

(6) If there is a surplus in the savings accounts after payment of debts, funeral expenses and costs of administration, how should it be distributed?

The court below ordered and adjudged: (a) If debts, funeral expenses and administration costs exceed the savings accounts, resort shall be had to the bonds for payment of the balance; if there is a surplus in the savings accounts after payment of these items, it shall be distributed according to the law of intestacy applicable 9 November 1958. (b) The provisions of paragraphs 4 and 5 violate the rule against perpetuities, and the bonds shall be now distributed 1/5 each to Linward A. Clarke, Madeline L. Clarke Blount, Norman

M. Clarke, and the administrator of Cornelius C. Clarke, and 1/5 shall be held in trust for Rudolph B. Clarke for the uses specified in the will.

Livermon and Long, guardians *ad litem*, appealed on behalf of their respective wards.

*Nicholas Long, Guardian Ad Litem for the unborn children of Rudolph B. Clarke and Norman M. Clarke, appellant.*

*J. S. Livermon, Guardian Ad Litem for the living minor children of Rudolph B. Clarke and living minor children of Norman M. Clarke, appellant.*

*George A. Hux, Guardian Ad Litem for Patsy McKay, Rosanne McKay, Charles McKay, Jr., and Freddie McKay, minors, and ancillary administrator of the estate of Cornelius Clarke, appellees.*

MOORE, J. "A limitation by . . . will . . . to the heirs of a *living* person, shall be construed to be to the children of such person, unless a contrary intention appear by the . . . will." G.S. 41-6. (Emphasis added.) In paragraphs 4 and 5 of the will of Maggie M. Clarke provision is made for the college education of the "heirs" of testatrix's sons, Norman and Rudolph. These sons were living at the time of the execution of the will and survived the testatrix. There is nothing in the will which indicates that testatrix intended to use the word "heirs" in its technical sense. Indeed a contrary intent is shown. It is provided in paragraph 7 that Norman and Rudolph are to share in the residue of the bonds after termination of the trust. Therefore testatrix contemplated that they might outlive the trust. Obviously she did not intend by the word "heirs" to designate beneficiaries of the trust as of the date of the deaths of Norman and Rudolph. Our construction is that the word "heirs," as used in paragraphs 4 and 5, means "children." *Lide v. Mears,* 231 N.C. 111, 56 S.E. 2d 404.

As corrected, paragraph 4 reads: "I give 50% of my war bonds and their accumulation to the *children* of my son, Norman M. Clarke, to be used for college education only." This item must be construed to mean that testatrix gave the bonds, to be used for college education, to the children of Norman who were living at the death of the testatrix. ". . . (a) legacy given to a class immediately, vests absolutely in the persons composing that class at the death of the testator; for instance, a legacy to the children of A: the children *in esse* at the death of the testator take estates vested absolutely,

and there is no ground upon which children who may be born afterwards can be let in." *Mason v. White*, 53 N.C. 421, 422. But where the gift is not immediate and there is an intervening life estate, the rule is otherwise. *Ibid*, 422. See also *Privett v. Jones*, 251 N.C. 386, 393, 111 S.E. 2d 533; *Sawyer v. Toxey*, 194 N.C. 341, 343, 139 S.E. 692. The rule quoted above has been consistently adhered to in this jurisdiction. *Cole v. Cole*, 229 N.C. 757, 760, 51 S.E. 2d 491; *Sawyer v. Toxey, supra; Wise v. Leonhardt*, 128 N.C. 289, 38 S.E. 892; *Walker v. Johnston*, 70 N.C. 576, 579.

What is ordinarily denominated "the rule against perpetuities" is as follows: No devise or grant of a future interest in property is valid unless the title thereto must vest, if at all, not later than twenty-one years, plus the period of gestation, after some life or lives in being at the time of the creation of the interest. If there is a possibility such future interest may not vest within the time prescribed, the gift or grant is void. *Parker v. Parker*, 252 N.C. 399, 402-3, 113 S.E. 2d 899; *McPherson v. Bank*, 240 N.C. 1, 15, 81 S.E. 2d 386.

The beneficiaries under the provisions of paragraph 4 were designated and in being at the death of the testatrix. Since the benefits were for their personal enjoyment, their rights thereto must vest, if at all, during their lives. Therefore, the rule against perpetuities has no application here and paragraph 4 is a valid testamentary disposition. What is said here with respect to paragraph 4 is equally applicable to paragraph 5, and it is likewise valid. The beneficiaries in paragraph 5 are the children of Rudolph who were living at the death of testatrix. There is nothing in the will which shows an intention on the part of the testatrix to avoid the quoted rule in the *Mason* case. "In our opinion, the testatrix did not intend a disposition of her property which would violate the rule against perpetuities." *Elledge v. Parrish*, 224 N.C. 397, 400, 30 S.E. 2d 314. The presumption is that the testatrix intended to make a legal and valid disposition of her property. *Trust Co. v. Waddell*, 234 N.C. 454, 460, 67 S.E. 2d 651.

The factual situation in *Parker v. Parker, supra*, though somewhat similar to that in the instant case, is distinguishable. In item 6 of the Parker will there was a devise of land to Cheshire J. Parker for life with remainder over at his death to his children. This was a gift to a class, subject to a life estate. The gift vested in those children of Cheshire J. Parker who were living at the death of the testator, subject to open up and make room for his after-born chil-

dren. In item 7 of the Parker will land was devised to Cheshire J. Parker in trust, the income to be used for college education of children. In item 7, the only designation of beneficiaries is the words "the children." Without reference to item 6 there is no way to determine what children or whose children are intended. Therefore, the only permissible inference is that "the children" are those children referred to in the preceding paragraph. "The children" in the preceding paragraph included after-born children. This then is one of the differentiating features of the *Parker* case. It is true that there are also important considerations in Parker as to remoteness of vesting of title which do not arise here. The two cases are significantly different.

In the case at bar the will sets no time or age limitations on the use of the funds by the beneficiaries for college education. "The court cannot make a will for the testator nor add to the valid portions of his will provisions which are not therein expressed." *Hodges v. Stewart*, 218 N.C. 290, 292, 10 S.E. 2d 723. The time of termination of the trust, for college education, may depend on many varying circumstances which cannot now be foreseen. In apt time it may be determined by the beneficiaries themselves or by the court in an appropriate proceeding. The provision of the will that trust funds may "in case of emergency or dire necessity . . . be used . . . by the parties" is a subordinate feature of the trust and the time within which such use may be made of them will not extend beyond the termination of their use for college education.

It seems to us clear that it is the intention of the testatrix, as gathered from paragraph 6, that the executor retain the bonds and administer the trust. Direction is given that the fund is to be issued to the father whenever the children "qualify to receive it." This means that when a particular child enters college and pursues his or her studies there, the executor is to provide the father with funds to meet the expense. This is a matter of convenience in administration. It relieves the executor of much detail, to a large extent frees him of the responsibility for seeing that the individual expenditures are proper, and makes the fund more readily available to the child. The conclusion that the executor is charged with the duties as trustee of the fund is further borne out by the provision that, at the termination of the trust, the residue is to be divided among the five children of testatrix. This can be best achieved if the fund is retained and administered by one person.

Equity requires that resort, for the payment of decedent's debts, funeral expenses and the costs of administration, first be had to

the assets of the estate which have not been impressed with the trust — the savings accounts. If these prove insufficient, recourse must be had to the bonds as far as necessary. But, if after payment of these items, any sum remains from the savings accounts, it shall be distributed according to the law of intestacy in effect 9 November 1958.

The gift of the residue of the trust fund in equal shares to testatrix's five children, as set out in paragraph 7, vested in these legatees upon the death of testatrix, and the share of each then became descendible and bequeathable through and by them respectively. *Little v. Trust Co.*, 252 N.C. 229, 249-250, 113 S.E. 2d 689. After naming Rudolph as one of the residuary legatees and giving him one of the five shares, the will states: "Rudolph B. Clarke's amount is to be used for, business investment, home improvement, or illness or hospitalization." It is our opinion that this provision does not render the gift to him of less quality than absolute; it is descendible and bequeathable through and by him. "Directions regulating mode of enjoyment of an absolute gift will not cut it down." 96 C.J.S., Wills, s. 841, p. 269. *Louderbough v. Weart*, 25 N.J. Eq., 399; *Simmons v. Simmons*, (Conn. 1923) 121 A. 819, 821. The directions regulating the mode of enjoyment of the gift are intended to apply to Rudolph personally. If the residue of the trust fund is distributed during his lifetime, it is the duty of the executor-trustee to supervise the expenditure of Rudolph's share in accordance with the directions above quoted.

No specific directions for distribution of the shares of the residue of the trust fund are presently possible. What is said in the preceding paragraph will guide the ultimate distribution. No one can now know who will finally be entitled to answer roll call.

The judgment below is reversed in so far as it is in conflict herewith and the cause is remanded to the end that judgment be entered in conformity with this opinion.

Reversed and remanded.